UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                             :

PENGUIN AIR CONDITIONING CORP., et al.,      :
                                             :

                      Plaintiffs,       :

                                           :        20-CV-3377 (JMF)

       -v-                            :

                                           :        <u>OPINION AND ORDER</u>

TRAVELERS INDEMNITY CO.,                :

                      Defendant.      :

                                           :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case involves an insurance coverage dispute with respect to a personal injury lawsuit

filed in state court by a worker allegedly injured on a construction site.  The plaintiff in that

action worked for Penava Mechanical Corp. ("Penava"), which had been hired to perform work

on the site by Penguin Air Conditioning Corp. ("Penguin Air"), which, in turn, had been hired by

three entities that owned or operated the site (collectively, the "Owners").  The question in this

case — raised by cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure — is whether and to what extent Travelers Indemnity Co. ("Travelers"),

which provided insurance to Penava, owes a duty to defend and indemnify Penguin Air and the

Owners, as "additional insureds," in the state-court action.  For the reasons that follow, the Court

holds that Travelers had a duty to defend Penguin Air, but that duty ended when claims seeking

to hold Penguin Air vicariously liable for Penava's acts were discontinued; that Travelers' duty

to defend the Owners is "co-primary" with the duty of another insurance carrier; that Travelers

has no duty to indemnify Penguin Air; and that it is premature to decide whether Travelers has a

duty to indemnify the Owners.  Thus, each motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The relevant facts — drawn from the pleadings and admissible materials that the parties submitted in connection with these motions — are undisputed.

**A.  The Relevant Parties**

This case involves a complex cast of characters involved in a project to renovate 285 Madison Avenue in New York, New York (the "Project"). 285 Madison Owner, LLC ("285 Madison") is the owner of the property. *See* ECF No. 37-4 ("Joint Stip.") ¶ 16.  In December 2012, 285 Madison entered into a management agreement with RFR Realty, LLC ("RFR Realty"), pursuant to which RFR Realty agreed to oversee the renovation and operation of the building at the Project. *See id.* ¶ 17; ECF No. 31-3.  Two weeks later, 285 Madison and RFR Realty entered into a contract with Structure Tone, Inc. ("Structure Tone" and, together with 285 Madison and RFR Realty, the "Owners") for Structure Tone to serve as the general construction manager for the Project. *See* Joint Stip. ¶ 20; ECF No. 31-4 ("GC Agreement").

Structure Tone then entered into two subcontracts in connection with the Project: a subcontract with Total Safety Consulting, LLC ("Total Safety"), pursuant to which Total Safety agreed to control on-site safety at the Project, *see* Joint Stip. ¶ 24; ECF No. 31-5; and a subcontract with Penguin Air, pursuant to which Penguin Air agreed to furnish and install piping for the HVAC system at the Project, *see* Joint Stip. ¶ 25; ECF No. 31-6 ("GC-Penguin Air Subcontract").  Structure Tone and Penguin Air also entered into a Blanket Insurance and Indemnity Agreement. *See* Joint Stip. ¶ 26; ECF No. 31-7 ("GC-Penguin Air Indemnity Agreement").  Under its agreements, Penguin Air was required to maintain Comprehensive General Liability Insurance with limits of at least $4 million per occurrence, *see* GC-Penguin Air

Indemnity Agreement 1, and to name the Owners as additional insureds on a "primary and non-contributory" basis, *see* GC-Penguin Air Subcontract 1.

In October 2013, Penguin Air entered into a subcontract with Penava, pursuant to which Penava agreed to furnish and install piping for the HVAC system at the Project. *See* Joint Stip. ¶ 30; ECF No. 31-9 ("Penguin Air-Penava Subcontract"). Under the subcontract, Penava agreed to purchase general liability insurance and to name "Penguin [Air], the Owner, Tenant and General Contractor and any other entity required to be named by Penguin [Air]" as "additional insureds" on such insurance. Penguin Air-Penava Subcontract 2. The subcontract further specified that all insurance provided by Penava "shall be primary as respects the coverage afforded the additional insureds" and "[a]ny other insurance available to Penguin will be excess and non-contributing to that supplied by the Subcontractor." *Id.*

## B.  The Underlying Action

On July 30, 2014, Michael Dorset filed a lawsuit in New York State Supreme Court against the Owners, seeking damages for injuries he allegedly sustained while working onsite at the Project (the "Underlying Action"). Joint Stip. ¶ 37. In his Complaint, Dorset alleged that, on March 26, 2014, he was injured while using an unsafe passageway to access the roof at the Project. *Id.* ¶¶ 34-35. At the time of the accident, Dorset was employed by Penava as a journeyman steamfitter at the Project. *Id.* ¶ 34.

After Dorset filed his Complaint, the Underlying Action took several turns. First, on January 16, 2015, Structure Tone filed a third-party action against Penguin Air and Penava asserting claims for contractual defense and indemnification, common law negligence, breach of contract, and attorney's fees (the "First Third-Party Action"). *See* ECF No. 31-12 ("First Third-

Party Compl.").[1]  In its answer to Structure Tone's third-party complaint, Penava asserted crossclaims against 285 Madison, RFR Realty, and Penguin Air for common law indemnification and contribution.  ECF No. 31-14 ("Penava Answer to First Third-Party Compl."), ¶¶ 31-34.

Second, eleven months later, the Owners filed a second third-party action against Penguin Air, Penava, and Total Safety (the "Second Third-Party Action").  ECF No. 31-15 ("Second Third-Party Compl.").  This second third-party complaint asserted claims for contractual defense and indemnification, common law negligence, breach of contract, and attorney's fees against all three defendants.  *Id.*  In its answer to this second third-party complaint, Penava asserted crossclaims against both Penguin Air and Total Safety for common law indemnification and contribution.  ECF No. 31-18 ("Penava Answer to Second Third-Party Compl."), ¶¶ 38-41. Likewise, Total Safety asserted crossclaims against Penguin Air and Penava for common law contribution and indemnification, as well as contractual defense and indemnification.  ECF No. 31-17 ("Total Safety Answer to Second Third-Party Compl."), ¶¶ 41-43.

Finally, to the extent relevant here, on July 26, 2017, the Owners discontinued (without prejudice) the First and Second Third-Party Actions against Penguin Air.  Joint Stip. ¶ 47.  As a result, the only remaining claims against Penguin Air in the Underlying Action are the crossclaims filed by Penava and Total Safety in those Third-Party Actions.  *Id.* ¶ 49.

---

[1]     Although the First Third-Party Complaint is dated January 7, 2015, *see* First Third-Party Compl. 17, it was filed in New York State Supreme Court on January 16, 2015, *see* Joint Stip. ¶ 38; Verified Third-Party Complaint, *Dorset v. 285 Madison Owner, LLC*, No. 157440/14 (N.Y. Sup. Ct. Jan. 16, 2015).

**C.  The Relevant Insurance Policies**

At issue here is insurance coverage for the Underlying Action for Penguin Air and the Owners.  Two insurance policies are relevant.

**1.  The Travelers Policy**

First, to satisfy its obligations under the Penguin Air-Penava Subcontract, Penava purchased Commercial General Liability Insurance from Travelers (the "Travelers Policy").  The Travelers Policy covered Penava as a named insured from February 20, 2014, to February 20, 2015, with liability limits of $1 million per occurrence.  Joint Stip. ¶ 1; Ex. 31-1 ("Travelers Policy"), at 1.[2]  The Travelers Policy provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" that is "caused by an 'occurrence'" which "occurs during the policy period."  Travelers Policy 16; *see also id.* at 29 (defining an "[o]ccurrence" as an "accident").  Under the Policy, Travelers also has a "duty to defend the insured against any 'suit' seeking those damages."  *Id.* at 16.

The Travelers Policy contains a Blanket Additional Insured Endorsement, which amends the "Who Is An Insured" provision of the Policy to include "any person or organization you are required to include as an additional insured on this policy by a written contract or agreement in effect during this policy period and signed and executed by you prior to the loss for which coverage is sought."  Travelers Policy 66.  The Endorsement further specifies that "[t]he person or organization is only an additional insured with respect to liability caused by 'your work' for that additional insured," and "[t]he person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization."  *Id.*

---

[2]     References to page numbers in the Travelers Policy are to the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

With respect to coverage for additional insureds, the Travelers Policy's Blanket Additional Insured Endorsement provides as follows:

> Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement in effect during this policy period and signed and executed by you prior to the loss for which coverage is sought specifically requires that this insurance apply on a primary or non-contributory basis.  When this insurance is primary and there is other insurance available to the additional insured from any source, we will share with that other insurance by the method described in the policy.

*Id.*  Additionally, the Policy contains an "Other Insurance" provision, which states that, "[i]f this insurance is primary, [Travelers'] obligations are not affected unless any of the other insurance is also primary."  *Id.* at 26.  In that case, "[i]f all other insurance permits contribution by equal shares, [Travelers] will follow this method also."  *Id.*  Conversely, "[i]f any of the other insurance does not permit contribution by equal shares, [Travelers] will contribute by limits."  *Id.* at 26-27.

### 2.  The Continental Policy

Second, pursuant to the GC-Penguin Air Subcontract and Indemnity Agreement, Penguin Air obtained Commercial General Liability Insurance from Continental (the "Continental Policy").  *See* Joint Stip. ¶ 8; ECF No. 31-2 ("Continental Policy").  The Continental Policy identifies Penguin Air as the named insured, *see* Continental Policy 27,[3] and the parties agree that it covers the Owners as additional insureds.  *See* ECF No. 42 ("Pls.' Reply"), at 14; ECF No. 44 ("Def.'s Reply"), at 8.  It provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that takes place

---

[3]      References to page numbers in the Continental Policy are also to the page numbers automatically generated by the Court's ECF system.

during the policy period and is caused by an "occurrence," Continental Policy 7, defined elsewhere as an "accident," *id.* at 19.  Pursuant to the policy, Continental also has a "duty to defend the insured against any 'suit' seeking those damages."  *Id.* at 7.

Like the Travelers Policy, the Continental Policy contains an "Other Insurance" provision addressing Continental's coverage obligations when other insurance is available for a covered loss.  *See* Continental Policy 16.  To the extent relevant here, the Other Insurance provision states that the policy "is primary except when" another provision, the Excess Insurance Clause, "applies" and that, if any other available insurance is also primary and "permits contribution by equal shares," Continental "will follow this method also."  *Id.* at 16, 105; *see* Joint Stip. ¶¶ 12, 15.  As relevant to this case, the Excess Insurance Clause provides, in turn, that "[t]his insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."  Continental Policy 16.  If the Continental Policy is excess pursuant to this clause, Continental has "no duty . . . to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'"  *Id.*

### 3.  The Tender and Response

In a letter dated March 30, 2015, Penguin Air notified Travelers of the Underlying Action and requested that Travelers defend and indemnify Penguin Air and the Owners as additional insureds under the Travelers Policy held by Penava.  Joint Stip. ¶ 53.  In response, Travelers denied coverage to Penguin Air and to the Owners.  *Id.* ¶ 55.  On January 21, 2020, after repeated requests for reconsideration by Penguin Air, the Owners, and later Continental,

Travelers agreed to share in the defense of the Owners — but not of Penguin Air — for the Underlying Action subject to a reservation of rights.  *Id.* ¶¶ 59-63.  This litigation followed.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

Where both sides move for summary judgment, as here, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Id.* (internal quotation marks omitted).  To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate

more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

## DISCUSSION

The parties' cross-motions for summary judgment raise three disputes: (1) whether Travelers has a duty to defend Penguin Air in the Underlying Action; (2) whether Travelers' coverage obligation to the Owners is primary or co-primary with Continental's coverage obligation; and (3) whether Travelers has a duty to indemnify Penguin Air and the Owners without reservation.  The Court will address each dispute in turn.

## A.  Travelers' Duty to Defend Penguin Air

The Court begins with the question of whether Travelers has a duty to defend Penguin Air in the Underlying Action.  Under New York Law — which the parties agree applies, *see Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) — "[a]n insurer's duty to defend its insured is exceedingly broad," *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37 (2010) (internal quotation marks omitted).  An insurer must defend its insured — whether the named insured or an "additional insured" — "whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014) (internal quotation marks omitted); *see also Kassis v. Ohio Cas. Ins. Co.*, 12 N.Y.3d 595, 599-600 (2009) (explaining that "'[a]dditional insured' is a recognized term in insurance contracts, and the well-understood meaning of the term is an entity enjoying the *same* protection as the

named insured" (internal quotation marks omitted)).  Even where a complaint does not itself suggest a reasonable possibility of coverage, an insurer has a duty to defend where "underlying facts made known to the insurer create a reasonable possibility that the insured may be held liable for some act or omission covered by the policy." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 70 (1991) (internal quotation marks omitted).  "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Euchner-USA*, 754 F.3d at 141.

In this case, the parties agree that whether Travelers has a duty to defend Penguin Air turns on the "additional insured" endorsement in the Travelers Policy.  *Compare* ECF No. 34 ("Pls.' Mem."), at 17-20, *and* Pls.' Reply 4-5, *with* ECF No. 39 ("Def.'s Mem."), at 14-18, *and* Def.'s Reply, 1-2.  As a threshold matter, the Travelers Blanket Additional Insured Endorsement provides coverage to "any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and signed and executed by you prior to the loss for which coverage is sought."  Travelers Policy 66.  Here, there is no dispute that that category includes Penguin Air, as Penava — Travelers' named insured — was required by the Penguin-Penava Subcontract to name Penguin Air as an "additional insured[]."  Penguin-Penava Subcontract 2; *see also* Joint Stip. ¶¶ 30, 32.  But the additional insured endorsement further provides that "[t]he person or organization is *only* an additional insured with respect to liability caused by 'your work' for that additional insured," and "[t]he person or organization does *not* qualify as an additional insured with respect to the independent acts or omissions of such person or organization." *Id.* (emphases added).  Under the policy, "you" and "your" refer to "the Named Insured in the Declarations" — that is, Penava. *Id.* at 16.  The terms do not refer to Penguin Air as it is not a named insured.

Thus, the parties' dispute turns on whether Penguin Air's potential liability in the Underlying Action is "caused by" Penava's "work" for Penguin Air or arises from Penguin Air's own "independent acts or omissions." *Compare* Pls.' Mem. 17-22, *and* Pls.' Reply 4-13, *with* Def.'s Mem. 14-19, *and* Def.'s Reply 1-7. The meaning of "liability caused by" the named insured in the context of an additional insured provision is "well settled as a matter of New York law." *Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn.*, No. 19-CV-1355 (AJN), 2021 WL 797670, at *3 (S.D.N.Y. Mar. 1, 2021) (citing *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 317 (2017)). "[W]here an insurance policy is restricted to liability for any bodily injury 'caused . . .' by the 'acts or omissions' of the named insured," as here, "the coverage applies to injury proximately caused by the named insured." *Burlington Ins. Co.*, 29 N.Y.3d at 317. Thus, insurance provisions with this language only "protect additional insureds from vicarious liability for the named insured's negligence." *Ohio Sec. Ins. Co.*, 2021 WL 797670, at *3 (citing *Burlington Ins. Co.*, 29 N.Y.3d at 326); *Tishman Techs. Corp. v. Travelers Indemnity Co. of Am.*, 161 A.D.3d 517, 518-19 (N.Y. App. Div. 2018) (interpreting an additional insured provision identical to the one at issue here and concluding plaintiff "would be an additional insured only if it were vicariously liable for [the named insured's] negligence"); *accord Fireman's Fund Ins. Co. v. Travelers Cas. Ins. Co. of Am.*, No. 151110/16, 2017 WL 2152583, at *6-7 (NY. Sup. Ct. May 15, 2017); *cf. St. Paul Fire & Marine Ins. v. Hanover Ins.*, 187 F. Supp. 2d 584, 590 (E.D.N.C. 2000) (applying North Carolina law and stating, with respect to an additional insured provision similar to the one here, that "the court must construe the 'arising out of [the subcontractor's work]' provision as one providing coverage in cases where the alleged liability is vicarious").

In light of that limitation, Travelers has the better of the argument with respect to the claims remaining in the Underlying Action. That is because *none* of the remaining claims in the Underlying Action seek to hold Penguin Air vicariously liable for Penava's work. There are no direct claims whatsoever against Penguin Air in Dorset's complaint. *See* Joint Stip. ¶ 37; *see, e.g.*, *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984) ("The duty to defend arises whenever the allegations in a complaint *against the insured* fall within the scope of the risks undertaken by the insurer . . . ." (emphasis added)). And the claims brought by Structure Tone and the Owners against Penguin Air in the First and Second Third-Party Complaints were discontinued. Joint Stip. ¶¶ 47, 49. As to Penguin Air, that leaves only the crossclaims for common law contribution and indemnification brought by Penava and Total Safety in the First and Second Third-Party Actions. *Id.* ¶ 49. Under New York law, however, claims for contribution and indemnification seek to hold a party responsible for *that* party's wrongdoing. *See, e.g.*, *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997) (contribution); *Westchester Cty. v. Welton Becket Assocs.*, 102 A.D.2d 34, 47 (N.Y. App. Div. 1984) (indemnification), *aff'd*, 66 N.Y.2d 642 (1985). As Penguin Air itself concedes, the sole claims remaining against Penguin Air in the Underlying Action — the crossclaims brought by Penava and Total Safety — do not seek to hold Penguin Air vicariously liable for Penava's work; they seek to hold Penguin Air liable for its own "independent acts or omissions." *See* Pls.' Mem. 18 (acknowledging that the "cross claims for contribution against Penguin seek to apportion liability to Penguin based upon *its* alleged negligence" (emphasis added)).[4]

---

[4]      Perhaps recognizing the fatal implications of its concession, Penguin Air asserts that the outstanding crossclaims are based on its "shared," not independent, negligence. Pls.' Mem. 18-19; *see* Pls.' Reply 7-8. But a claim for "shared" negligence — whatever that may mean — does not amount to a claim for vicarious liability, the only type of liability covered under Travelers' additional insured provision. *See Kavanaugh v. Nussbaum*, 71 N.Y.2d 535, 546 (1988) (defining

It follows that, with respect to the remaining claims in the Underlying Action, Penguin

Air is not an "additional insured" within the meaning of the Travelers Policy and, thus, "as a

matter of law . . . there is no possible factual or legal basis on which" Travelers "might

eventually be held to indemnify" Penguin Air.  *City of Johnstown, N.Y. v. Bankers Standard Ins.

Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989).  Accordingly, Travelers has no duty to defend Penguin

Air against the remaining claims in the Underlying Action and is entitled to summary judgment

on that issue.  *See id.*; *Kookmin Best Ins. Co., Ltd. v. Foremost Ins. Co.*, No. 18-CV-782 (PAE),

2019 WL 1059973, at *5 (S.D.N.Y. Mar. 5, 2019) ("An insurer's duty to defend is excused . . . if

it can show that, as a matter of law, there is no possible factual or legal basis on which the

insurer might eventually be held to indemnify the insured." (internal quotation marks omitted));

*Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991) ("[A]n insurer can be relieved of its duty to

defend if it establishes as a matter of law that there is no possible factual or legal basis on which

it might eventually be obligated to indemnify its insured under any policy provision."); *see also,

e.g.*, *Ohio Sec. Ins. Co.*, 2021 WL 797670, at *6 (granting summary judgment with respect to the

duty to defend on the ground that there was no "reasonable possibility that [the insurer would] be

required to indemnify the first-party defendants in [the] suit").

That is not the end of the matter, however.  Although the parties do not dwell on the

issue, Structure Tone and the Owners *did* seek to hold Penguin Air vicariously liable for the acts

of Penava, its agent, in the First and Second Third-Party Complaints.  That is, both brought

claims of common law negligence against Penguin Air, alleging that any injury suffered by

Dorset on the Project was caused by "the carelessness, recklessness, negligence, culpability

---

"vicarious liability" as the "imputation of liability to [a] defendant for another person's fault,
based on [that] defendant's relationship with the wrongdoer").

and/or acts of omission and/or commission by the third-party defendant, PENGUIN AIR

CONDITIONING CORP., *its agents*, servants and/or employees."  First Third-Party Compl.

¶ 18; *accord* Second Third-Party Compl. ¶ 24; *see, e.g.*, *Meyer v. Holley*, 537 U.S. 280, 285

(2003) ("It is well established that traditional vicarious liability rules ordinarily make principals

or employers vicariously liable for acts of their agents or employees in the scope of their

authority or employment.").  What is more, "facts made known to" Travelers suggest that any

liability Penguin Air would have had to Structure Tone or the Owners was indeed caused by

Penava's work for Penguin Air.  *Fitzpatrick*, 78 N.Y.2d at 69.  Penava was, of course, working

for Penguin Air at the Project pursuant to the Penguin-Penava Subcontract.  *See* Joint Stip. ¶¶ 30-

31.  Dorset was an employee of Penava at the time of the accident.  *Id.* ¶ 34.  And he alleged in

testimony that Penava's foreman was responsible for showing him the unsafe passageway to

access the roof of the Project that caused his injuries.  *See* ECF No. 31-10, at 191-93.

Additionally, Dorset's bill of particulars alleges that Penava had actual knowledge of the

allegedly unsafe passageway that caused Dorset's accident.  *See* ECF No. 43-2, ¶¶ 9-11.

In short, with respect to Structure Tone's and the Owners' common law negligence

claims, Penguin Air plainly did qualify as an "additional insured" within the meaning of the

Travelers Policy.  That, in turn, means that, as long as those claims were pending, Travelers had

a duty to defend Penguin Air in the Underlying Action.  Moreover, that duty extended to the

*entirety* of the Underlying Action.  *See, e.g.*, *Cowan v. Codelia, P.C.*, No. 98-CV-5548 (JGK),

1999 WL 1029729, at *4 (S.D.N.Y. Nov. 10, 1999) ("[I]f the insurer has a duty to defend any

part of an action, then the insurer has a duty to defend the entire action." (citing *Frontier

Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997)); *see also

Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011) ("If any of

the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action." (cleaned up)).[5] But once those claims were discontinued, there was — for the reasons discussed above — "no possible factual or legal basis on which" Travelers "might eventually be held to indemnify" Penguin Air. *Kookmin Best Ins. Co.*, 2019 WL 1059973, at *5.

In sum, applying the plain terms of the Travelers Policy, the Court holds that Travelers had a duty to defend Penguin Air in the Underlying Action from January 16, 2015, when the First Third-Party Complaint was filed, until July 26, 2017, when all claims against Penguin Air that triggered the "additional insured" endorsement were discontinued. With respect to that period, therefore, Penguin Air is entitled to summary judgment and — as Penguin Air argues, *see* Pls.' Mem. 24-25, and Travelers does not dispute — Travelers must reimburse Penguin Air for its reasonable defense costs, plus interest. *See, e.g.*, *Fieldcamp v. City of New York*, 242 F. Supp. 2d 388, 391 (S.D.N.Y. 2003) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue." (quoting *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997))). By contrast, since July 26, 2017, Travelers has had no duty to defend Penguin Air in the Underlying Action. With respect to that period and (absent a material change of circumstances) going forward, therefore, Travelers is entitled to summary judgment.

---

[5]     To the extent that the parties do discuss whether the claims brought by Structure Tone and the Owners in the First and Second Third-Party Complaints triggered a duty on Travelers' part to defend Penguin Air, they focus almost exclusively on the claims for contractual indemnification. *See* Pls.' Mem. 21; Def.'s Mem. 3 n.1, 18 & n.6; Pls.' Reply 13; Def.'s Reply 5-6. In light of the Court's conclusion that the common law negligence claims triggered Travelers' duty to defend Penguin Air as to the entire action, however, the Court need not and does not resolve the parties' dispute about whether the contractual indemnification claims triggered a duty as well.

**B.  Travelers' Duty to Defend the Owners**

The parties' next dispute is whether Travelers has a primary duty to defend the Owners in the Underlying Action or whether its duty to defend the Owners is "co-primary" — that is, shared — with Continental.  *Compare* Pls.' Mem. 25, 30, *with* Def.'s Mem. 19, 25.  Where an insured is entitled to defense coverage under two insurance policies — as the Owners indisputably are here, *see* Pls.' Reply 14; Def.'s Reply 8 — the insurers' respective obligations are a function of "the 'other insurance' provisions in the several policies." *IBM Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 429 (2d Cir. 2002) (citing *State Farm Fire & Cas. Co. v. LiMauro,* 65 N.Y.2d 369, 372 (1985)); *see also Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686-87 (1999).  If each policy provides that its coverage is primary, with coverage as to another primary policy to be determined by the "method" of "equal shares," *see, e.g.*, Continental Policy 16, then coverage will be co-primary.  By contrast, if one policy has a *pro rata* clause and the other has an excess clause, "the New York rule is that the insurer with the *pro rata* clause . . . loses.  It becomes the primary insurer and the insurer with the excess clause . . . is indeed excess, not *pro rata.*" *IBM Corp.*, 303 F.3d at 429.

Here, the parties agree that the Travelers Policy provides primary coverage to the Owners and, in the case of other insurance, *pro rata* coverage.  *See* Pls.' Reply 14; Def.'s Reply 8; Travelers Policy 26, 36, 66.  Thus, the parties' dispute depends on whether, as to the Owners, the Continental Policy provides for *pro rata* or excess coverage.  *Compare* Pls.' Reply 14, *with* Def.'s Reply 8-9.  That, in turn, depends on whether the Continental Policy's "Excess Insurance Clause" — which, as relevant here, provides that Continental's "insurance is excess over . . . any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of

16

an endorsement," Continental Policy 16 — applies to the Owners.  If it does, then the policy is excess, and Travelers would be obligated to provide the Owners with a full defense "up to the limits of its policy before [Continental's] cover becomes effective."  *Great N. Ins. Co.*, 92 N.Y.2d at 687.  If it does not, then the Continental Policy's other insurance clause would provide for *pro rata* sharing, *see* Continental Policy 16, and Travelers' duty would be only co-primary.[6]

Plaintiffs argue that the term "you" in the Excess Insurance Clause covers both Penava, as the named insured, *and* parties added as additional insureds, including the Owners.  *See* Pls.' Reply 14.  By contrast, Travelers contends that "you" refers only to Penava as the named insured.  *See* Def.'s Reply 9.  The Court agrees with Travelers.  The Continental Policy defines "you" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy."  Continental Policy 7.  This definition does not include "additional insureds" such as the Owners.  *See, e.g.*, *Zurich Am. Ins. Co. v. Harleysville Ins. Co.*, 194 F. Supp. 3d 253, 262 (S.D.N.Y. 2016) (interpreting an identical definition of "you" in an insurance contract to "refer[] only to the 'named insured,' . . . and not to any additional insureds" under New York law).  That omission is especially noteworthy given that the term "additional insureds" is used elsewhere in the policy, *see*, *e.g.*, Continental Policy 16, 48, 105; that is, the drafters of the policy knew how to include additional insureds when they wanted to do so.  In fact, some other provisions of the policy use the terms "you" and "additional insured" together in ways that would, at best, create confusion and, at worst, make no sense if the former

---

[6]     There is another provision in the Continental Policy's other insurance clause that could be construed to prohibit Continental from "seek[ing any] contribution" from Travelers at all.  *See* Continental Policy 105 (providing that "coverage afforded to an additional insured under the terms of an endorsement attached to this policy is primary insurance and [Continental] will not seek contribution from any such additional insured's primary insurance" under certain conditions).  Neither side, however, references this provision.  Accordingly, they have forfeited any arguments that could be made with respect to the provision.

encompassed the latter.  *See, e.g.*, Continental Policy 105 ("[C]overage afforded to an additional insured . . . is primary . . . if: (1) You have agreed in writing in a contract or agreement that this insurance will be primary and noncontributory[.]").  In short, because the definition of "you" in the Continental Policy refers to named insureds, not to additional insureds, the Owners, as additional insureds, are not covered by the Excess Insurance Clause.  It follows that coverage under the Continental Policy is also *pro rata* and Travelers' duty is only co-primary.

Plaintiffs' arguments to the contrary are unpersuasive.  Plaintiffs contend that, as additional insureds, the Owners "'qualify' as [] named insured[s] under the . . . Policy," and thus fall within the policy's definition of "you."  Pls.' Reply 14-15 (quoting Continental Policy 16). In support of this contention, Plaintiffs cite precedent establishing that the term "additional insured" means "an entity enjoying the same protection as the named insured."  *Id.* at 15 (quoting *Kassis*, 12 N.Y.3d at 599-600).  But there is a substantial difference between saying that additional insureds "enjoy[] the same protection" as named insureds under the policy and saying that additional insureds "'qualify' as [] named insured[s]" and thus fall within the definition of "you" in the policy.  Plaintiffs cite no authority supporting such a logical leap.  Moreover, the Continental Policy itself makes plain that the category "Named Insured" does not encompass everyone with the protections of an "insured" under the policy as it includes a separate definition for the term "insured."  *See* Continental Policy 7 (defining "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured").

In sum, the Court holds that Travelers' duty to defend the Owners in the Underlying Action is co-primary with Continental's, such that "each insurer [will] contribute[] equal amounts" to the defense costs "until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first."  Continental Policy 16; Travelers Policy 26.

**C.  Travelers' Duty to Indemnify**

The parties' third and final dispute — whether Travelers is required to indemnify both Penguin Air and the Owners in the Underlying Action, without reservation, *compare* Pls.' Mem. 30, *with* Def.'s Mem. 25 — requires little discussion.  The duty to indemnify is "distinctly different" from the duty to defend, *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985), as it is measured by the "actual basis for the insured's liability" rather than "the allegations of [the] pleadings," *Euchner-USA, Inc.*, 754 F.3d at 140.  Thus, unlike the duty to defend, "the duty to indemnify arises only when a third party's claim *actually* lies within a policy's coverage."  *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 249 (S.D.N.Y. 2019), *aff'd*, 816 F. App'x 611 (2d Cir. 2020).

As discussed above, there are no remaining claims against Penguin Air in the Underlying Action that "*actually* lie[] within" the Travelers Policy's "coverage."  *Id.*  It therefore follows that, no matter what happens in the Underlying Action, Travelers has no duty to indemnify Penguin Air.  *See id.*; *see also, e.g.*, *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990) (noting that where there is no duty to defend there is no duty to indemnify because the former is "broader than" the latter).  By contrast, whether Travelers owes a duty to indemnify the Owners without reservation cannot be determined at this time.  That is because "[w]hether, on what theory[,] and to what extent [the Owners] may ultimately be held liable" cannot, at this time, "be predicted with precision."  *Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*, 39 N.Y.2d 875, 876 (1976) (concluding that "any determination as to the obligation of the insurer to indemnify its insured would . . . be premature and must await the resolution of the underlying claim").  Accordingly, the parties' cross-motions for summary judgment with respect to whether Travelers has a duty to indemnify the Owners without reservation are denied without

prejudice to renewal after completion of the Underlying Action.  *See, e.g.*, *Travelers Property Cas. Corp. v. Winterthur Int'l*, No. 02-CV-2406 (SAS), 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002); *Statt v. Am. Home Assur. Co.*, 595 N.Y.S.2d 700, 701 (N.Y. App. Div. 1993).

## CONCLUSION

For the reasons stated above, the Court holds that:

- Travelers had a duty to defend Penguin Air in the Underlying Action from January 16, 2015, when the First Third-Party Complaint was filed, to July 26, 2017, when all claims against Penguin Air that triggered the "additional insured" endorsement were discontinued and, thus, for this period, Penguin Air is entitled to reimbursement for its reasonable defense costs plus interest;

- Since July 26, 2017, Travelers has had no duty to defend Penguin Air in the Underlying Action;

- Travelers duty to defend the Owners in the Underlying Action is co-primary with Continental;

- Travelers has no duty to indemnify Penguin Air in the Underlying Action; and

- A decision on whether Travelers has a duty to indemnify the Owners in the Underlying Action should be deferred.

Accordingly, the parties' cross-motions for summary judgment are GRANTED in part and DENIED in part.  (To be clear: In the case of Plaintiffs' motion for summary judgment with respect to their claim that Travelers has a duty to indemnify the Owners without reservation, that denial is without prejudice to renewal following resolution of the Underlying Action.)

The parties shall confer and, **within three weeks of the date of this Opinion and Order**, file a joint letter advising whether there is agreement with respect to the amount that Travelers should pay Penguin Air in connection with the period (from January 16, 2015, to July 26, 2017) for which it had a duty to defend.  If the parties do not reach agreement on that issue, they should (1) provide their views on how to resolve any disagreement, including, if appropriate, a briefing schedule; and (2) indicate whether referral to a Magistrate Judge or the

Court-annexed mediation program for settlement would be appropriate.  Finally, in their joint letter, the parties should also address whether partial judgment should be entered, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, as to the claims resolved in this Opinion and Order.  If so, and if appropriate, the parties should also file a proposed partial judgment.

The Clerk of Court is directed to terminate ECF Nos. 30 and 36.


SO ORDERED.

Dated: September 24, 2021
       New York, New York

_____
JESSE M. FURMAN
United States District Judge